IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE | § | |
|         Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:17-CV-00125-RP |
| | § | |
| BAYLOR UNIVERSITY, | § | |
|         Defendant. | § | |

## DEFENDANT BAYLOR UNIVERSITY'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT

TO THE JUDGE OF THE HONORABLE COURT:

Defendant Baylor University (Defendant or Baylor) provides this Answer to Plaintiff's Original Complaint and Jury Demand (Dkt. 1) as follows:

## DEFENSES

In asserting the following defenses, Baylor does not admit that the burden of proving the allegations or denials contained in the defenses is upon Baylor, but, to the contrary, that the burden of proving the facts relevant to many of the defenses and the burden of proving the inverse of the allegations contained in many of the defenses is upon the Plaintiff. Moreover, Baylor does not admit, in asserting any defense, any liability, but, to the contrary, specifically denies any and all allegations of liability in the Plaintiff's lawsuit. Without admitting liability as to any of Plaintiff's causes of action, Baylor asserts the following defenses:

1.      Plaintiff's claims are barred by the statute of limitations.

2.      Plaintiff's claims are barred by laches.

3.      To the extent that Title IX allows Plaintiff to proceed on a theory that allows the imposition of civil liability based on sexual assaults perpetrated by third-party students in

contexts not under the substantial control of Baylor, Title IX exceeds the scope of Congress's power under the Fourteenth Amendment and fails to provide Baylor with sufficient notice of this type of liability under the Spending Clause.

4.     Any claim that Baylor's alleged acts and omissions created a heightened risk of sexual assault is speculative, non-justiciable, and fails to meet the Article III case and controversy requirement.

5.     To the extent Plaintiff has incurred any recoverable damages, she has failed to mitigate those damages by, among other things, failing to pursue civil claims and other remedies against all of the alleged perpetrators of the alleged sexual assault and failing to utilize policies and services maintained by Baylor.  She has similarly failed to mitigate damages by failing to pursue civil claims against the third-party property owners where the alleged rape occurred.

6.     Plaintiff has failed to join all parties needed for just adjudication.

7.     The actions and omissions of third parties were the sole proximate cause of the alleged injuries and damages, if any, sustained by Plaintiff.

8.     To the extent the viability of Plaintiff's Title IX claim depends on any Dear Colleague Letter or other sub-regulatory guidance issued by a governmental agency, such letters and guidance are unenforceable insofar as they were not promulgated pursuant to notice-and-comment rulemaking and are contrary to the plain language of Title IX itself.  The U.S. Department of Education has acknowledged that administrative guidance documents, issued without notice and comment, do not have "the force and effect of law."  Catherine E. Lhamon, Ass't Sec'y of Educ., Letter to U.S. Sen. James Lankford, Feb. 17, 2016, p. 2.  Moreover, as the U.S. Court of Appeals for the Fifth Circuit noted as recently as May

2, 2017, non-compliance with a Dear Colleague Letter is not actionable. *See K.S. v. Northwest Indep. Sch. Dist.*, No. 16-40093, 2017 WL 1683093 (5th Cir., May 2, 2017) ("Even if the District failed to follow guidelines from the Office for Civil Rights or even its own policies, deliberate indifference is not thereby shown.").

9.  Plaintiff's Complaint fails to state a valid claim for damages for a violation of Title IX under *Davis v. Monroe County Board of Education*, 526 U.S. 628 (1999).

## ORIGINAL ANSWER

Without waiving the foregoing defenses, Defendant answers the allegations of the Plaintiff's Original Complaint as follows:

### Response to Part I, "Parties"

1.  Defendant admits that Plaintiff was a student-athlete attending Baylor University at the time of the alleged assault in 2012.

2.  Admitted.

### Response to Part II, "Jurisdiction and Venue"

3.  Defendant admits that the Court has jurisdiction over Plaintiff's Title IX claim pursuant to 28 U.S.C. § 1331.

4.  Defendant admits that venue is proper in the Western District of Texas, Waco Division.

### Response to Part III, "General Allegations"

5.  Admitted.

6.  Admitted.

7.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the averment contained in the first sentence of Plaintiff's Paragraph 7 and therefore cannot admit or deny the averment. Defendant denies the averments in the second sentence of Plaintiff's Paragraph 7.

8.      Denied.

9.      Defendant admits that the Plaintiff has filed suit under Title IX, but Defendant denies the remaining averments in Plaintiff's paragraph 9.

## Response to Part IV, "Evolution of Baylor's Football Program"

10.     Defendant admits that, in September 2003, it hired Ian McCaw as its athletic director. Defendant admits that the previous athletic director resigned.  Defendant admits that, in 2005, a basketball player pleaded guilty to the 2003 murder of a teammate.  Defendant admits that there were allegations that the basketball coach had encouraged other players to lie.  Defendant admits that the coach allegedly said that the deceased student had sold drugs.  Defendant lacks knowledge or information sufficient to form a belief regarding the truth of the averment regarding the coach's alleged motive.

11.     Defendant admits that the Baylor football team finished at or near the bottom of the Big 12 South Division of the Big 12 Conference from 1996 to 2009, which included the first two years that Art Briles coached at Baylor.

12.     Defendant admits that Art Briles was hired in 2008 to lead the Baylor football program, which included improving the performance of the football team and winning games.  Defendant admits that the media attributed the quoted language in the second sentence of Paragraph 12 to Briles.  Defendant denies the remaining averments in paragraph 12.

13.     Defendant admits that Briles signed his first recruiting class in February 2008.  Defendant admits that its football team finished higher in the Big 12 beginning in 2010; however, there was no longer a Big 12 South Division after the 2010 season.   Defendant is not required to admit or deny Plaintiff's vague and indeterminate opinion of the football team as "one of the most feared."

14.     Admitted.

4

15.     Denied.  Defendant admits that it won 9 regular season games in 2010, followed by a bowl game win, and that, in 2010, Robert Griffin III because Baylor's first Heisman Trophy winner.

16.     Defendant admits that many fans and students were excited about the team, that then President Ken Starr led the freshman student organization "The Baylor Line" onto the field at the beginning of home football games beginning in 2010, and that at one time he said that Baylor was entering a "Golden Era"; however, Defendant denies that Starr was referring only to the football team.

17.     Although Defendant admits that there were times during the football season when games and players were promoted on campus, Baylor denies that daily life at Baylor was "dominated" by football.  Other averments not specifically admitted are denied.

18.     Defendant admits that alumni donations increased over time, but Defendant is without knowledge or information sufficient to form a belief regarding the motivation for or purpose of any particular donation.  Defendant admits that it broke ground on the construction of McLane Stadium on September 15, 2012, and that the final construction cost was around $266 million. Defendant lacks knowledge of information sufficient to form a belief regarding the truth of the allegation regarding a gang rape.  All other averments not admitted are denied.

19.     Defendant admits that its football team finished higher in the Big 12 beginning in 2010; however, there was no longer a Big 12 South Division after the 2010 season.  Defendant admits that, after finishing 10th and 12th in the conference in 2008 and 2009, Baylor finished sixth in the 12-team conference in 2010 (4th in the South Division).  Defendant further admits that its football team finished 3rd, 5th, 1st, 1st, and 4th out of ten teams for the remainder of Briles's

tenure as head football coach.  Defendant denies that the football team won 42 games from 2011-2014, but admits that it won 40 games during that time period.

### Response to Part V, "The Culture of Sexual Violence at Baylor: Recruiting"

20.     The averments in Paragraph 20, including all of its subparts, are denied.  Regarding Footnote 1, Defendant lacks knowledge or information sufficient to form a belief about the truth of the vague allegation regarding an undated statement by an unnamed football player.  Defendant denies that Baylor had a policy of using alcohol, drugs, sex, or female companionship to show recruits a "good time."

21.     Defendant denies that Baylor football coaching staff implemented or encouraged the alleged "recruiting policies and practices" as listed in Plaintiff's Paragraph 20.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the remaining averments in Paragraph 21.

22.     Denied.

### Response to Part VI, "The Culture of Sexual Violence at Baylor: The Hostess Program"

23.     Defendant admits that athletic recruiting was supported in part by the Baylor Bruins, a student organization housed within the Baylor Sports Network, whose goals were (1) to personify the morals and values of Baylor University by engaging students in order to cultivate the Baylor Alumni experience while students are still on campus and (2) to support the development and expansion of the Baylor Sports Network, Baylor Admissions, Baylor Student Life, Career Services, and Baylor Athletics. While the Bruins membership was largely female, under the organization's bylaws, any student enrolled for 12 hours and with a 2.5 or higher GPA could apply.  The remaining averments in Paragraph 23 are denied,

24.     Defendant admits that, among other activities and duties, the Baylor Bruins members served as student hosts for prospective student athletes and their families on official visits.

Bruins bylaws required the Bruin students to maintain a "professional relationship" with prospective athletes at all times and prohibited outside contact with prospective athletes. The remaining averments in Paragraph 24 are denied.

25. Defendant admits that the Baylor Bruins hosted recruits and their families while the recruits were visiting the campus. Bruins bylaws required the Bruin students to maintain a "professional relationship" with prospective athletes at all times and prohibited outside contact with prospective athletes. The remaining averments in Paragraph 25 are denied.

26. Denied.

27. Baylor admits that the Bruins had an official policy of no sexual contact with recruits/prospective athletes or football players. The remaining averments in Paragraph 27 are denied.

28. Defendant denies the allegation that the Baylor Bruins used "sexuality and the implied promise of female companionship" to recruit athletes. Bruins bylaws required the Bruin students to maintain a "professional relationship" with prospective athletes at all times and prohibited any outside contact with prospective athletes. Defendant lacks knowledge or information sufficient to form a belief about the truth of the vague allegation regarding "similar programs around the country." Defendant is not required to admit or deny Plaintiff's conclusions or characterization of a Tenth Circuit court of appeals opinion

29. Baylor denies that there was an "implied promise of sex" made during football recruiting or at any time. Defendant lacks knowledge or information sufficient to form a belief about the truth of Plaintiff's averment regarding unidentified "reports." Defendant denies that any sexual activity, if it occurred, was pursuant to a policy or was encouraged or approved by Baylor. Defendant admits that an athlete and a member of the Bruins dated and later had a child together. Any remaining averments in Paragraph 29 not herein admitted are denied.

30.    Denied.

**Response to Part VII ,"The Culture of Sexual Violence at Baylor: Disciplinary Black Hole"**

31.    Denied.

32.    Denied.

33.    Defendant lacks knowledge or information sufficient to form a belief about the truth of Plaintiff's averment that Briles and Shillinglaw were involved in "'discipline'" of football players; the averment places the word "discipline" in quotation marks without explanation or definition.  Baylor admits that Briles had authority to discipline football players for violations of football team rules or athletic department rules.  Defendant denies that football players were insulated "from being implicated in any wrongdoing."

34.    Because Plaintiff's paragraph 34 vaguely refers to, but does not identify, "several instances," Defendant lacks knowledge or information sufficient to form a belief about the truth of the first sentence in Plaintiff's averment.  However, Defendant admits that an investigation focusing on three specific school years found occasions when football coaches failed to take effective action in response to allegations of misconduct by football players.  Defendant admits that during the period under review football coaches often did not report misconduct incidents to university officials outside of athletics.  Defendant admits that some football coaches conducted their own, untrained internal inquiries outside of Baylor's policies. Defendant denies that football coaches "*never* reported instances of player misconduct to anyone outside of the Athletics Department or made sure sure the players were punished."

35.    Denied.

**Response to Part VIII, "The Culture of Sexual Violence at Baylor: Hazing and Team 'Bonding' Rituals"**

36.     Defendant denies that, prior to Plaintiff's enrollment, it was aware of allegations that members of the football team engaged in hazing that involved "house parties" and the drugging or gang rapes of female students.  Defendant denies that, prior to Plaintiff's alleged assault, it was aware of allegations that members of the football team engaged in hazing that involved "house parties" and the drugging or gang rapes of female students.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment that football players drugged or sexually assaulted female students.  Defendant denies that such incidents, if they occurred, were part of a "system" or policy of the football program or Baylor. Defendant denies that private "house parties" hosted by individual members of the football team were sanctioned or sponsored by the football program or Baylor.

37.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment that football players were involved in "gang rapes" of female students as part of a "bonding" experience or for any other purpose.  Defendant denies that it was aware of the allegation that football players engaged in gang rapes as a "bonding" experience.

38.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment that photographs and videotapes of gang rapes were circulated among football players.

39.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment that "football parties" featured dog fighting and that a dog almost died.

40.     Denied.

**Response to Part IX, "The Culture of Sexual Violence at Baylor: Baylor Controlled the Context of the Rape and Harrassment"**

41.     Denied.

42.     Due to Plaintiffs' vague and undated averments and the lack any factual detail regarding unidentified alleged rapes, Defendant lacks information or knowledge that it would enable it to form a belief regarding the truth of this averment.

43.     Due to Plaintiffs' vague and undated averments and the lack any factual detail regarding unidentified "assailants," Defendant lacks information or knowledge that it would enable it to form a belief regarding the truth of this averment.

44.     Defendant denies that the Baylor Athletic Department coordinated housing for scholarship football players which was almost entirely located in off-campus apartments.  Defendant admits that freshman football players were required to live on-campus.  Defendant denies that it assigned or coordinated housing for football players beyond the freshman year. Regarding Footnote 3, Defendant admits that, during Plaintiff's enrollment at Baylor, approximately 60% of undergraduate students lived off-campus, while 98-99% of first-time freshmen lived on-campus.

45.     Defendant admits that Baylor issued scholarship checks each month to football players who received an athletic scholarship which was meant to cover housing costs, as permitted by NCAA rules.  Plaintiff does not identify any or "most of the sexual assaults" or the locations where they allegedly occurred; due to the breadth and vagueness of the averment, Defendant lacks information or knowledge that it would enable it to form a belief regarding the truth of this averment.

46.     Defendant admits that it required freshman football players to live on-campus.  Defendant admits that members of the athletic department staff would provide assistance to upperclassman players if and when players requested such assistance.  Defendant denies that it limited players' housing choices beyond the requirement that freshman players live on-campus, denies that it

managed housing for football players, and denies that it "required specific housing changes or restrictions." The remaining averments in Paragraph 46 not herein admitted are denied.

**Response to Part X, "Evolution of Baylor's Rape Culture"**

47.    Denied.

48.    Defendant admits that, as of fall 2016, it had become aware of reports of seventeen allegations of physical and/or sexual assault made against nineteen athletes, including four alleged rapes involving more than one football player. Plaintiff's alleged rape in 2012 was the first allegation of a gang rape reported to Baylor. Defendant denies that it had knowledge of any gang rapes prior to the alleged assault on the Plaintiff. Defendant denies that the May 2016 Findings of Fact contained any findings that confirmed the occurrence of any sexual assaults or any specific number of assaults. The Pepper Hamilton investigation focused on the response to allegations of sexual assault and not on whether sexual assaults occurred. Defendant denies that it is aware of "52 acts of rape" and "five gang rapes" by 31 football players between 2011 through 2014. Defendant denies that "52 acts of rape" by football players were reported to Baylor between 2011 and 2014.

49.    Defendant denies that Baylor football had a "rape culture" that resulted in student violence on and off campus. Defendant denies that it received reports of "52 acts of rape" by football players. Defendant admits that, between 2012 and 2016, two football players were expelled following an allegation of sexual assault. Defendant lacks knowledge or information sufficient to form a belief about the remaining averments in Paragraph 49, which Plaintiff appears to have copied from pleadings from a different lawsuit, *Elizabeth Doe v. Baylor University*.

50.    Defendant admits that the May 2016 Findings of Fact indicated Title IX implementation deficiencies outside of the football program. Defendant admits that the media reported that

Patty Crawford said that she handled 416 sexual misconduct cases while at Baylor.  All other averments not expressly admitted are denied.

51.     Defendant denies that it had a "rape culture" or a "sexual assault culture."  The remainder of Plaintiff's Paragraph 51 is a series of unnumbered bullet points and thus fails to comply with the Federal Rules of Civil Procedure.  For ease of reference, Defendant has numbered the bullet points.

51.1    Defendant admits that Ian McCaw was hired as Baylor's Athletic Director in September 2003.

51.2    Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point.  Plaintiff apparently has copied an allegation from a different lawsuit, *Jane Doe 1 v. Baylor University*, 6:16-cv-00173-RP.

51.3    Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point.  Plaintiff apparently has copied this allegation from a different lawsuit, *Jane Doe 1 v. Baylor University*, 6:16-cv-00173-RP.

51.4    Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point. Plaintiff apparently has copied this allegation from a different lawsuit, *Jane Doe 1 v. Baylor University*, 6:16-cv-00173-RP.

51.5    Defendant admits that Briles was named as Baylor's Head Football Coach on or about November 28, 2008.

51.6    Defendant admits that Briles signed his first recruiting class at Baylor on or about February 6, 2008.

51.7    Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding an alleged May 2009 assault.

51.8    Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding an alleged October 2009 assault.

51.9    Defendant denies that Baylor's football team played their last regular season game on November 27, 2010.  Baylor admits that the football team's 2010 regular season, which ended on November 20, 2010, was its first winning season since 1995.

51.10   Defendant admits that on December 29, 2010, Baylor's football team made its first bowl game appearance in 16 years.

51.11   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding an alleged January 2011 assault.

51.12   Defendant admits that the U.S. Department of Education issued subregulatory guidance in the form of a "Dear Colleague Letter" on April 4, 2011.  Defendant is not required to admit or deny Plaintiff's view of the law or Plaintiff's characterization of educational institutions' legal duties under Title IX or the Dear Colleague Letter.

51.13   Defendant denies that Cole was charged with sexual assault on May 9, 2011. Defendant admits, based on media reports, that, on May 4, 2011, Robert Cole was charged with sexual assault and that he turned himself in to police on or about May 9, 2011.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the remaining averments in this bullet point.

51.14    Defendant admits that the Waco Police Department issued a citation to Tevin Elliott in 2011 for a "Class C assault" based on the allegation that Elliott poked a non-Baylor student with a broom and pinned her against a wall in the student's apartment.  Defendant lacks

knowledge or information sufficient to enable Defendant to form a belief as to the truth of the remaining averments in this bullet point.

51.15   Defendant admits that its football team finished the 2011 season on December 3, 2011.  Defendant denies that it won 10 regular season games.  Defendant admits that it won 9 regular season games in 2011.

51.16   Denied.   Robert Griffin III became Baylor's first Heisman Trophy winner on December 10, 2011.

51.17   Defendant admits that its football team beat the Washington Huskies in the 2011 Valero Alamo Bowl on December 29, 2011.

51.18   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding Plaintiff's alleged assault.

51.19   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in this bullet point regarding alleged assaults of other Baylor students.   Responding further, this alleged incident occurred after Plaintiff's alleged assault and therefore was not known to Baylor prior to Plaintiff's alleged assault.

51.20   Defendant admits that Tevin Elliott was convicted in January 2014 of sexually assaulting a Baylor student on April 15, 2012.  Responding further, this alleged incident occurred after Plaintiff's alleged assault and therefore was not known to Baylor prior to Plaintiff's alleged assault.

51.21   Defendant admits that Tevin Elliott was arrested for two counts of sexual assault on April 30, 2012.

51.22   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding alleged harassment of Plaintiff by football players in May 2012.

51.23 Defendant admits that on or around July 2, 2012, Shawn Oakman signed his letter of intent to transfer from Penn State to Baylor after being released for a violation of team rules. Defendant denies that it was aware of any allegations of sexual assault involving Oakman at Penn State.

51.24   Defendant admits that Plaintiff's mother met with an assistant football coach at a Waco restaurant to discuss Plaintiff's alleged sexual assault.   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment regarding the date of the meeting.  Defendant denies that Plaintiff's mother identified all players who allegedly participated in the assault.    Defendant admits that Plaintiff's mother identified two players who allegedly participated in the assault.

51.25   Defendant admits that it broke ground on the construction of McLane Stadium on or about September 15, 2012.

51.26   Denied.  Baylor's football team won 7 of 12 regular season games in its 2012 season, which ended on December 2, 1012.

51.27   Defendant admits that Baylor's football team beat UCLA's football team in the Bridgepoint Education Holiday Bowl on December 27, 2012.

51.28   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding alleged harassment of Plaintiff in January 2013.

51.29   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point.

51.30   Denied.

51.31   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point.

51.32   Defendant admits that, on or near February 11, 2013, a female student alleged that a football player brandished a gun.   The remaining averments in Paragraph 51.32 are denied.

51.33   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding text messages Plaintiff allegedly received.

51.34   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding the alleged burglary of Plaintiff's apartment.

51.35   Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding text messages Plaintiff allegedly received.

51.36   Defendant admits that Plaintiff met with Coach Briles to report an alleged burglary and the names of the players allegedly involved.

51.37   Admitted.

51.38   Defendant has moved to strike Plaintiff's averment in bullet point number 51.38; therefore, no response is required until the Court rules on the motion to strike.

51.39   Defendant has moved to strike Plaintiff's averment in bullet point number 51.39; therefore, no response is required until the Court rules on the motion to strike.

51.40   Defendant has moved to strike Plaintiff's averment in bullet point number 51.40; therefore, no response is required until the Court rules on the motion to strike.

51.41   Defendant admits that the director of sports ministry led a mission trip of several dozen students to Africa in May 2013.  Defendant admits that it later learned that one of the attendees was a person who allegedly assaulted the Plaintiff.

51.42   Defendant has moved to strike Plaintiff's averment in bullet point number 51.42; therefore, no response is required until the Court rules on the motion to strike.

51.43   Defendant has moved to strike Plaintiff's averment in bullet point number 51.43; therefore, no response is required until the Court rules on the motion to strike.

51.44   Plaintiff apparently has copied this allegation from a different lawsuit, *Jane Doe 1 v. Baylor University*, 6:16-cv-00173-RP.  Defendant has moved to strike Plaintiff's averment in bullet point number 51.44; therefore, no response is required until the Court rules on the motion to strike.

51.45   Defendant admits that Plaintiff reported the alleged sexual assault to the director of sports ministry.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in this bullet point regarding the date of this report.

51.46   Defendant has moved to strike Plaintiff's averment in bullet point number 51.46; therefore, no response is required until the Court rules on the motion to strike.

51.47   Defendant has moved to strike Plaintiff's averment in bullet point number 51.47; therefore, no response is required until the Court rules on the motion to strike.

51.48   Denied.  Briles agreed to a new ten-year contract on November 13, 2013.

51.49   Defendant has moved to strike Plaintiff's averment in bullet point number 51.49; therefore, no response is required until the Court rules on the motion to strike.

51.50   Defendant has moved to strike Plaintiff's averment in bullet point number 51.50; therefore, no response is required until the Court rules on the motion to strike.

51.51   Defendant admits that Tevin Elliott was sentenced to twenty years in prison for raping a female Baylor student in 2012.  The remaining averments in this bullet point are denied. Two other women testified that they had been raped by Elliott.  A third woman testified that Elliott had poked her with a broom and pinned her against a wall in her apartment.

51.52   Plaintiff apparently has copied this allegation from a different lawsuit, *Lozano v. Baylor University*, 6:16-cv-00403-RP.  Defendant has moved to strike Plaintiff's averment in bullet point number 51.52; therefore, no response is required until the Court rules on the motion to strike.

51.53   Plaintiff apparently has copied this allegation from a different lawsuit, *Lozano v. Baylor University*, 6:16-cv-00403-RP.  Defendant has moved to strike Plaintiff's averment in bullet point number 51.53; therefore, no response is required until the Court rules on the motion to strike.

51.54   Defendant has moved to strike Plaintiff's averment in bullet point number 51.54; therefore, no response is required until the Court rules on the motion to strike.

51.55   Defendant admits that on April 29, 2014, the U.S. Department of Education issued subregulatory guidance in the form of a document titled "Questions and Answers on Title IX and Sexual Violence."  Defendant is not required to admit or deny Plaintiff's view of the law or Plaintiff's characterization of educational institutions' legal duties under Title IX or the Dear Colleague Letter.

51.56   Plaintiff apparently has copied this allegation from a different lawsuit, *Lozano v. Baylor University*, 6:16-cv-00403-RP.  Defendant has moved to strike Plaintiff's averment in

bullet point number 51.56; therefore, no response is required until the Court rules on the motion to strike.

51.57   Plaintiff apparently has copied this allegation from a different lawsuit, *Jane Doe 1 v. Baylor University*, 6:16-cv-00173-RP.  Defendant has moved to strike Plaintiff's averment in bullet point number 51.57; therefore, no response is required until the Court rules on the motion to strike.

51.58   Defendant has moved to strike Plaintiff's averment in bullet point number 51.58; therefore, no response is required until the Court rules on the motion to strike.

51.59   Defendant admits that its football team played the first game in McLane Stadium on August 31, 2014, and that the team beat SMU's football team 45-0.  Defendant admits that the final construction cost for the stadium was around $266 million.

51.60   Defendant has moved to strike Plaintiff's averment in bullet point number 51.60; therefore, no response is required until the Court rules on the motion to strike.

51.61   Admit.

51.62   Defendant has moved to strike Plaintiff's averment in bullet point number 51.62; therefore, no response is required until the Court rules on the motion to strike.

51.63   Defendant has moved to strike Plaintiff's averment in bullet point number 51.63; therefore, no response is required until the Court rules on the motion to strike.

51.64   Defendant has moved to strike Plaintiff's averment in bullet point number 51.64; therefore, no response is required until the Court rules on the motion to strike.

51.65   Defendant admits that on February 4, 2015, Patty Crawford informed certain Baylor administrators the she had learned of three allegations of gang rape involving Baylor football players that had allegedly occurred in the spring 2012 semester but that were not

reported in 2012.  Defendant admits that Crawford also received a report of dating violence that allegedly occurred in January 2013.  Defendant admits that Crawford asked McCaw whether he knew about the sexual assaults and he said he did not. Defendant admits that McCaw inquired if a football player who had information about sexual assaults could receive immunity under Title IX and that Crawford said no.

51.66   Defendant has moved to strike Plaintiff's averment in bullet point number 51.66; therefore, no response is required until the Court rules on the motion to strike.

51.67   Defendant has moved to strike Plaintiff's averment in bullet point number 51.67; therefore, no response is required until the Court rules on the motion to strike.

51.68   Defendant has moved to strike Plaintiff's averment in bullet point number 51.68; therefore, no response is required until the Court rules on the motion to strike.

51.69   Defendant has moved to strike Plaintiff's averment in bullet point number 51.69; therefore, no response is required until the Court rules on the motion to strike.

51.70   Defendant admits that, on or about August 26, 2015, Ian McCaw acknowledged that he was informed in the spring semester of 2013 about a sexual assault that allegedly occurred in 2012.  Any remaining averments in this bullet point not herein admitted are denied.

51.71   Defendant has moved to strike Plaintiff's averment in bullet point number 51.71; therefore, no response is required until the Court rules on the motion to strike.

51.72   Defendant admits that, on or about September 2, 2015, the Board of Regents announced that it had engaged outside counsel Pepper Hamilton, LLP, to conduct an independent and external review of Baylor's institutional response to Title IX and related compliance issues through the lens of specific cases.

51.73   Defendant has moved to strike Plaintiff's averment in bullet point number 51.73; therefore, no response is required until the Court rules on the motion to strike.

51.74   Defendant has moved to strike Plaintiff's averment in bullet point number 51.74; therefore, no response is required until the Court rules on the motion to strike.

51.75   Defendant has moved to strike Plaintiff's averment in bullet point number 51.75; therefore, no response is required until the Court rules on the motion to strike.

51.76   Defendant has moved to strike Plaintiff's averment in bullet point number 51.76; therefore, no response is required until the Court rules on the motion to strike.

51.77   Defendant has moved to strike Plaintiff's averment in bullet point number 51.77; therefore, no response is required until the Court rules on the motion to strike.

51.78   Defendant has moved to strike Plaintiff's averment in bullet point number 51.78; therefore, no response is required until the Court rules on the motion to strike.

51.79   Defendant has moved to strike Plaintiff's averment in bullet point number 51.79; therefore, no response is required until the Court rules on the motion to strike.

51.80   Defendant has moved to strike Plaintiff's averment in bullet point number 51.80; therefore, no response is required until the Court rules on the motion to strike.

51.81   Defendant has moved to strike Plaintiff's averment in bullet point number 51.81; therefore, no response is required until the Court rules on the motion to strike.

51.82   Defendant has moved to strike Plaintiff's averment in bullet point number 51.82; therefore, no response is required until the Court rules on the motion to strike.

51.83   Defendant has moved to strike Plaintiff's averment in bullet point number 51.83; therefore, no response is required until the Court rules on the motion to strike.

51.84   Defendant has moved to strike Plaintiff's averment in bullet point number 51.84; therefore, no response is required until the Court rules on the motion to strike.

51.85   Defendant has moved to strike Plaintiff's averment in bullet point number 51.85; therefore, no response is required until the Court rules on the motion to strike.

51.86   Defendant admits that, on May 13, 2016, the Board of Regents issued a press release noting that it had received a comprehensive briefing from Pepper Hamilton, LLP. Defendant denies the remaining averments in this bullet point.

51.87   Defendant admits that former Athletic Director Ian McCaw resigned on May 30, 2016.

51.88   Defendant has moved to strike Plaintiff's averment in bullet point number 51.88; therefore, no response is required until the Court rules on the motion to strike.

51.89   Defendant has moved to strike Plaintiff's averment in bullet point number 51.89; therefore, no response is required until the Court rules on the motion to strike.

51.90   Defendant has moved to strike Plaintiff's averment in bullet point number 51.90; therefore, no response is required until the Court rules on the motion to strike.

51.91   Defendant has moved to strike Plaintiff's averment in bullet point number 51.91; therefore, no response is required until the Court rules on the motion to strike.

51.92   Denied.  Defendant admits that Patty Crawford resigned on October 3, 2016.

51.93   Defendant has moved to strike Plaintiff's averment in bullet point number 51.93; therefore, no response is required until the Court rules on the motion to strike.

51.94   Defendant admits that, on or around October 19, 2016, the U.S. Department of Education's Office for Civil Rights confirmed that it was conducting a Title IX investigation at

Baylor University.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the remaining averments in this bullet point.

51.95  Defendant admits that, by the fall 2016, it had become aware of reports of seventeen allegations of physical and/or sexual assault made against nineteen athletes, including four alleged rapes involving more than one football player.  Plaintiff's alleged rape in 2012 was the first report of a gang rape received by Baylor.  The remaining averments are denied.

51.96  Defendant has moved to strike Plaintiff's averment in bullet point number 51.96; therefore, no response is required until the Court rules on the motion to strike.

51.97  Defendant admits that, on December 11, 2016, the Board of Regents determined that a third party review of the Pepper Hamilton investigation was not necessary.

51.98  Admit.

51.99  Defendant admits that, on December 22, 2016, the WALL STREET JOURNAL reported that then President Kenneth Starr granted an appeal by Tevin Elliott relating to allegations of academic misconduct in 2011.

51.100 Defendant has moved to strike Plaintiff's averment in bullet point number 51.100; therefore, no response is required until the Court rules on the motion to strike.

51.101 Defendant admits that Gabrielle Lyons reportedly told a reporter about the allegation referenced in Plaintiff's bullet point 51.101.

51.102 Defendant has moved to strike Plaintiff's averment in bullet point number 51.102; therefore, no response is required until the Court rules on the motion to strike.

52.   Denied.

53.   Defendant denies that Baylor received "countless" reports of sexual assault and dating violence.  Defendant admits that its annual reports of campus crime and fire statistics did not

reference forcible or non-forcible sex offenses for the years 2008, 2009, 2010, and 2011 for the Waco campus of Baylor University and University property such as Floyd Casey Stadium and the Baylor Track Complex.

54.     Defendant admits that Gabrielle Lyons was employed as a Title IX Investigator at Baylor from April 1, 2015, until she resigned on November 1, 2015. Defendant admits that a media report attributed the quote in the second sentence of Plaintiff's Paragraph 54 to Lyons. Defendant denies that the article indicates that Lyons made the statement in the third sentence of Paragraph 54. The article states that Lyons "said cases involving football comprised less than a third of her workload." Defendant admits that Baylor police officers offered to accompany Lyons any time she felt that an interview or other situation might escalate and/or become difficult. Any remaining averments in Paragraph 54 not herein admitted are denied.

55.     Defendant denies that the Board of Regents acknowledged a "culture of sexual violence." Defendant admits that J. Cary Gray made the statement quoted in Paragraph 55.  Defendant is not required to admit or deny Plaintiff's characterization or opinions of the quoted language.

56.     Admitted.

57.     Defendant admits that ESPN reported in 2016 that a former SANE nurse said that she saw about eight Baylor students per year who reported an assault and that some of the students reported that athletes were the alleged perpetrators.  However, Defendant lacks knowledge or information sufficient to admit or deny the truth of the averment that Michelle Davis made these statements to a reporter.

58.     Defendant denies that a Baylor regent said "Pepper's investigation also showed that some players took part in a horrifying and painful string of sexual assaults over the course of several

years."   However, Defendant admits that one or more regents has expressed being deeply saddened and horrified by the findings.

59.     Defendant denies the first sentence in Plaintiff's Paragraph 59.  Defendant admits that the May 2016 Findings of Fact looked at policies in effect between 2012 and 2015.

### Response to Part XI, "The Culture of Sexual Violence at Baylor: The Baylor Policies"

60.     Defendant denies that it has or has ever had a "*policy* of no or little discipline for football players."   At all times during Plaintiff's enrollment, Defendant's Student Code of Conduct prohibited sexual misconduct, and those rules applied equally to athletes.  These policies were maintained on the University's website during the 2012-13 school year when Plaintiff allegedly was assaulted.  Defendant denies that the football program "routinely and deliberately" failed to discipline players who allegedly engaged in sexual assault and dating violence.  Defendant admits that the May 2016 Findings of Fact state that student conduct processes in and out of athletics failed to "consistently" provide a prompt and equitable response under Title IX. Defendant admits that the May 2016 Findings of Fact contain the quoted language in last sentence of Plaintiff's Paragraph 60.

61.     Defendant denies that it had a "*policy* of interference with female students' access to help."   Defendant maintained a written policy prohibiting sexual misconduct at all times during Plaintiff's enrollment.  Additionally, during the 2012-2013 school year when Plaintiff allegedly was sexually assaulted, Defendant posted information and resources for students on its website. Defendant admits that the May 2016 Findings of Fact contains the quoted language in Plaintiff's Paragraph 61.

62.     Defendant denies that it had a "*policy* of enacting a separate system of discipline for the football team."   Defendant denies that the Baylor Findings of Fact concluded that all misconduct

by football players was "ignored" or that football players were "untouchable."  Defendant admits that the May 2016 Findings of Fact contain the quoted language in Plaintiff's Paragraph 62.

63.     Defendant denies that it or its athletic department had a "a *policy* of not reporting allegations or instances of sexual and dating violence."  Defendant admits that the quoted language in Plaintiff's Paragraph 63 appears in the May 2016 Findings of Fact.

64.     Defendant denies that it had "a *policy* of diverting cases away from student conduct or criminal processes."  At all times during Plaintiff's enrollment, Defendant's Student Code of Conduct prohibited sexual misconduct, and those rules applied equally to athletes.  Defendant admits that the quoted language in Plaintiff's Paragraph 64 regarding some individuals is found in the May 2016 Findings of Fact.  Defendant denies that "football players could be sexually violent with impunity."

65.     Defendant denies that it had a "*policy* of not educating staff and/or students."  Defendant denies that "Women on campus had no idea what resources were available to them" and were unaware of Title IX.  Defendant admits that the quoted language in Plaintiff's Paragraph 65 is found in the May 2016 Findings of Fact.

66.     Defendant denies that it had a "*policy* of accepting football players with histories of violence toward women."  Defendant denies that it had a "policy" of accepting high-risk transfers from other football programs without conducting due diligence.  To the contrary, as noted in the language from the May 2016 Findings of Fact that Plaintiff quotes in Paragraph 66, Baylor had previously implemented processes regarding criminal background checks, requests for records of any prior college disciplinary actions, and character reference screening forms.  Defendant admits that the May 2016 Findings of Fact document contains the quoted language in Plaintiff's Paragraph 62, which states that processes were not "consistently" followed.

67.     Defendant denies that "Baylor also had a 'show 'em a good time' recruiting policy, which included making Baylor Bruins available for sex with recruits, taking recruits to strip clubs, recruiting based on implied promises of sex with Baylor women who 'love football players,' and using alcohol and drugs in the recruiting process."

68.     Defendant admits that the May 2016 Findings of Fact document contains the quoted language in Plaintiff's Paragraph 68.  Defendant denies that "With knowledge and notice of the inordinate number of assaults, Baylor deliberately failed to address the risk, as found by the Baylor Findings."

69.     Denied.

70.     Defendant admits that the May 2016 Findings of Fact document contains the quoted language in Paragraph 70.

71.     Denied.

72.     Denied.

73.     Because Paragraph 73 is vague and lacks any factual detail, Defendant lacks sufficient information or knowledge to form a belief regarding the truth of the statement as worded. However, Defendant denies that it has knowledge of "five instances" in which female students reported sexual assaults or physical abuse directly to a football coach or athletic staff.  Defendant admits it became aware of reports by three female students of sexual assaults or physical abuse to football coaches or athletic staff.

### Response to Part XII, "Plaintiff is Violently Gang Raped By As Many As Eight Baylor Football Players"

74.     Defendant admits that the Outpost is an off-campus apartment complex.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the averment that Plaintiff and her friends went to a house party at the Outpost.  Defendant admits that the Outpost

Apartments was a location where some upperclassman football players lived during the 2011-12 school year.

75.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments in Paragraph 75.

76.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments in Paragraph 76.

77.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments in Paragraph 77.

78.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments in Paragraph 78 and footnote 4.

79.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments in Paragraph 79.

80.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments in Paragraph 80.

81.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the averment that football players "perpetuated rumors about Plaintiff throughout the Baylor campus."

### Response to Part XIII, "Baylor Subjects Plaintiff To A Continuing Hostile Environment"

82.     Denied.

83.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the averment that Plaintiff told her mother about the alleged assault.  Defendant admits that Plaintiff's mother called and later met with an assistant football coach at McCalister's Deli. Defendant admits that Plaintiff's mother told the coach about an alleged sexual assault.

Defendant lacks sufficient information or knowledge to admit or deny the date of the meeting or the remaining averments in Plaintiff's Paragraph 83.

84.     Defendant admits that three Regents filed an answer in the *Shillinglaw v. Baylor University, et al.* lawsuit in which they acknowledged that Plaintiff's mother met with an assistant football coach at an off-campus deli and that the mother provided the names of two of the five football players who allegedly had participated in the alleged gang rape.  Defendant further admits that the Regents' Answer acknowledged that the assistant football coach questioned the two accused players, but they said they did not harm the student and that the conduct was consensual.  Defendant admits that the students told the assistant coach that their conduct was "fooling around" and "just a little bit of play time."  Defendant admits that the assistant football coach spoke to other coaches and that the Regents' Answer states that the coaches' "apparent response" was victim blaming.  Defendant admits that the assistant coach concluded that the accusations of the gang rape were in a "gray area" and there was no definitive evidence of sexual assault.  The remaining averments in Paragraph 84 are denied.

85.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 85 regarding the alleged behavior of the football players.

86.     Denied.

87.     Denied.

88.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment that Plaintiff had to put earphones in her ears to make it through class.  Defendant denies the remaining averments in Plaintiff's Paragraph 88.

89.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 89.

90.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 90.  Due to the confidentiality of Plaintiff's counseling records, if any, Defendant at this time is not able to review the records of any counseling visits to verify Plaintiff's allegation.

91.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 91.

92.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 92.

93.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in the first sentence of Paragraph 93.  Defendant admits that, in or around February 2013, a female student contacted an assistant football coach regarding her claim that a football player had brandished a gun at her.  Defendant admits that the assistant coach notified Briles and that the quoted text message conversation is correct.  Defendant admits that the football coaches handled the matter internally and did not refer the matter to Judicial Affairs.  The remaining averments are denied.

94.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 94.

95.     Defendant admits that in or around April 2013, Plaintiff met with Briles.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of Plaintiff's averments characterizing Briles' manner during the meeting.  The remaining averments are denied.

96.     Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 96.

97.     Defendant admits that Plaintiff and her parents met with her coach and an assistant coach regarding the alleged assault in April 2013 and that Plaintiff provided a list of five alleged participants.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments regarding the level of detail in Plaintiff's account of her alleged assault.

98.     Defendant admits that Plaintiff's coach met with Briles and that, according to Plaintiff's coach, he gave Briles a list of the players involved and Briles reportedly made the quoted statement.

99.     Defendant admits that Plaintiff's coach met with McCaw regarding Plaintiff's alleged assault and that, according to Plaintiff's coach, McCaw stated that there was nothing could be done if the student did not prosecute.  Defendant admits that McCaw initially stated that he did know about the report of an alleged sexual assault.   Defendant admits that McCaw later acknowledged that the meeting with Plaintiff's coach occurred in April 2013.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment in the final sentence of Paragraph 99.

100.    Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 100.

101.    Defendant admits that Plaintiff attended a mission trip to Africa led by the Director of Sports Ministries.  Defendant admits that it later learned that one of the attendees was a person who allegedly assaulted the Plaintiff.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the remaining averments in Paragraph 101.

102.    Defendant admits that Plaintiff transferred to a different university after the Spring 2013 semester.  Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the remaining averments in Paragraph 102.

103.    Defendant admits that Plaintiff spoke with the Director of Sports Ministries about the alleged assault but Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the remaining averments in Paragraph 103, including the date of the conversation.

104.    Defendant admits that Patty Crawford, then the Title IX coordinator, received allegations in 2015 regarding three alleged gang rapes that allegedly occurred in 2012.  Defendant admits that she provided this information to Ian McCaw, Christopher Holmes, and others at a meeting on or about Ferbuary 4, 2015.

105.    Admitted.

106.    Defendant admits that McCaw stated in August 2015 that he learned about allegations involving the Plaintiff in or around April 2013.  Defendant admits that McCaw has stated that he directed Plaintiff's coach to the Office of Judicial Affairs.  Defendant admits that McCaw has referenced a lack of training as a reason why he did not report the incident.

107.    Denied.

108.    Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averment regarding unidentified coaches and unidentified officials and whether they were "relieved."

109.    Defendant admits that it believes that McCaw, Briles, and members of the volleyball staff did not report Plaintiff's alleged sexual assault to Judicial Affairs or outside athletics in 2013. The remaining averments in Plaintiff's paragraph 109 are denied.

110.    Defendant lacks knowledge or information sufficient to enable Defendant to form a belief as to the truth of the averments in Paragraph 110.

111.    Denied.

112.    Denied.

113.    Denied.

**Response to Part XIV.A, "Gender Discrimination Under Title IX: Deliberate Indifference to Plaintiff's Gang Rape (Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a))"**

114.    To the extent necessary, Baylor incorporates by reference all of the above-related paragraphs.

115.    Denied.

116.    Defendant admits that Plaintiff is a member of a protected class.   The remaining averments in Paragraph 116 are denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

**Response to Part XIV.B, "Discrimination Under Title IX: Sexually Hostile Culture (Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (a))"**

127.    To the extent necessary, Baylor incorporates by reference all of the above-related paragraphs.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

**Response to Part XIV.C, "Accrual of Plaintiff's Pre-Assault 'Heightened Risk' Claims"**

132.    To the extent necessary, Baylor incorporates by reference all of the above-related paragraphs.

133.    Defendant is not required to admit or deny Plaintiff's legal arguments or its characterization of a Fifth Circuit opinion.

134.    Denied.

135.    Denied.

**Response to Part XIV.D "Fraudulent Concealment and Equitable Tolling: Plaintiff's Post-Reporting Claims"**

136.    To the extent necessary, Baylor incorporates by reference all of the above-related paragraphs.

137.    Denied.

138.    Denied.

139.    Denied.

140.    Admitted.

141.    Defendant admits that certain regents used the phrase in the first sentence in Paragraph 141.  The remaining averments in Paragraph 141 are denied.

142.    Defendant denies the first sentence in Paragraph 142.  Defendant is not required to admit or deny Plaintiff's legal arguments or its characterization of a Fifth Circuit opinion.

143.    Denied.

144.    Denied.

### Response to Part XV, "Request For Permanent Injunction"

145.    Defendant denies that Plaintiff is entitled to, or has standing to seek, a permanent injunction or any equitable relief.

### Response to Part XVI, "Attorneys Fees"

146.    Defendant denies that Plaintiff is entitled to attorneys' fees.

### Response to Part XVII, "Jury Demand"

147.    This demand does not require a response.  Defendant demands a trial by jury on all issues so triable.

### Response to Part XVIII, "Relief Requested"

148.    Defendant denies that Plaintiff is entitled to any of the relief requested.

### CONCLUSION AND PRAYER

Defendant denies any and all further allegations not specifically addressed in this answer and denies that Plaintiff has stated a valid claim or is entitled to relief.  Defendant prays that the Court dismiss all of Plaintiff's claims with prejudice, that she take nothing, and that the Court grant any other relief to which Defendant shows itself entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:      /s/ *Lisa A. Brown*
           Lisa A. Brown
           Texas Bar No. 03151470
           Phoenix Tower, Suite 2000
           3200 Southwest Freeway
           Houston, Texas  77027-7554
           (713) 554-6741 (telephone)
           (713) 583-7934 (fax)
           lbrown@thompsonhorton.com

           Holly G. McIntush
           Texas Bar No. 24065721
           400 West 15th Street, Suite 1430
           Austin, Texas  78701-1648
           (512) 615-2351 (telephone)
           (512) 682-8860 (facsimile)
           hmcintush@thompsonhorton.com

COUNSEL FOR DEFENDANT
BAYLOR UNIVERSITY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing pleading was served upon opposing counsel on June 27, 2017, via the Court's ECF/CMF electronic filing and service system as follows:

> Mr. Muhammad S. Aziz
> Abraham, Watkins, Nichols,
> Sorrels, Agosto & Aziz
> 800 Commerce Street
> Houston, Texas  77002
> maziz@abrahamwatkins.com

 /s/ *Lisa A. Brown*
Lisa A. Brown

909383
094030.000011