IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE, | § § § | |
| Plaintiff, | § § | |
| v. | § | 6:17-CV-125-RP |
| BAYLOR UNIVERSITY, | § § § | |
| Defendant. | § § | |

## ORDER

Plaintiff Jane Doe ("Plaintiff"), a former student at Baylor University who alleges that she was sexually assaulted during her freshman year, brings this suit against Defendant Baylor University ("Defendant" or "Baylor"). (Compl., Dkt. 1, ¶¶ 1–2, 6–7). Plaintiff seeks to hold Baylor liable under Title IX of the Education Amendments Act of 1972 ("Title IX"), which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); (Compl., Dkt. 1, ¶ 114–31). She requests a mandatory injunction ordering Defendant to: (1) "refrain from unlawful discrimination and/or retaliation"; (2) "undertake and rectify any and all Title IX violations and/or inequities"; (3) "refrain from creating and condoning a hostile sexual harassment and/or discriminati[ng] environment against individuals on the basis of sex by immediately ceasing deliberate indifference to sexual assaults"; and (4) "cease interference with the disciplinary process in favor of students who were charged with sexual assault." (*Id.* ¶ 145). Currently before the Court is Defendant's Partial Motion to Dismiss, (Dkt. 9), through which the university seeks dismissal of Plaintiff's post-reporting claims and claim for injunctive relief.

1

# I. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

# II. FACTUAL BACKGROUND

Plaintiff enrolled at Baylor, where she was a member of the women's volleyball team, in the fall of 2011. (Compl., Dkt. 1, ¶ 6). She alleges that she was gang-raped at an off-campus location by between four and eight Baylor football players on February 11, 2012. (*Id.* ¶¶ 7, 51, 74, 78).

Plaintiff alleges that her mother met with an assistant football coach in July 2012; her mother reportedly "did not reveal her daughter's name" but "did provide the coach with a list of the players who were involved in Plaintiff's sexual assault." (*Id.* ¶¶ 51, 83). That coach subsequently spoke to two of the involved players and to other Baylor football coaches, but allegedly took no further action. (*Id.* ¶ 84).

After Baylor football players burglarized her apartment, Plaintiff alleges, she met with Art Briles—then Baylor's head football coach—to report the incident and the names of the players involved. (*Id.* ¶ 51). She and her parents also allegedly met with two members of the volleyball coaching staff, informing them of the sexual assault and identifying the relevant players. (*Id.*). The

2

head volleyball coach reportedly informed Briles and Baylor Athletic Director Ian McCaw of the same information. (*Id.* ¶ 98). Plaintiff left Baylor after the spring 2013 semester, (*id.* ¶ 6), but reported her assault to an individual identified as "Baylor's [f]ootball [c]haplain" in the fall of 2013, (*id.* ¶ 51).

Plaintiff alleges that she was "repeatedly subjected to verbal abuse and public humiliation" by Baylor football players following her assault. (*Id.* ¶ 80; *see also id.* ¶ 51). Specifically, she claims the football players "harassed both Plaintiff and her family members via text message" and harassed Plaintiff verbally both on- and off-campus. (*Id.* ¶ 85). Plaintiff avers that she "was forced to face her assailants" both in the classroom and during volleyball practice and training sessions. (*Id.* ¶¶ 86–88).

### III. POST-REPORTING CLAIMS

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in all federally-funded educational programs. 20 U.S.C. § 1681(a). Specifically, it provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

*Id.* When Congress first passed Title IX more than forty years ago, it had two related objectives: first, Congress wanted to prevent federal funds from being used to support discriminatory practices; second, it wanted to provide individuals "effective protection against those practices." *Cannon v. Univ. Chic.*, 441 U.S. 677, 704 (1979); *see also* 118 Cong. Rec. 5730 (1972) (statement of Senator Birch Bayh) ("The amendment we are debating is a strong and comprehensive measure which I believe is needed if we are to provide women with solid legal protection as they seek education and training for later careers. . . . As a matter of principle, our national policy should prohibit sex discrimination at all levels of education."). When private universities like Baylor accept funding through various federal programs, including by enrolling students who receive federal funds to pay for their

education, they become subject to the requirements of Title IX. *See Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 466 (1999).

Title IX is enforceable through an individual's private right of action and allows for the recovery of damages. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999) (citing *Cannon*, 441 U.S. 677 and *Franklin v. Gwinnett Cty. Public Schs.*, 503 U.S. 60 (1992)).

Title IX claims are commonly asserted in response to a student's sexual harassment or assault. The Supreme Court has held that sexual harassment within a school or school program is a form of sex discrimination when the harassment is so severe, pervasive, and objectively offensive that it deprives the victim of educational opportunities or benefits provided by the school. *Davis*, 526 U.S. at 650. A school can be held liable for such harassment when it is deliberately indifferent to harassment of which it has actual knowledge. *Id.* This is true regardless of whether the harasser is an employee of the school or another student, but liability under this avenue is limited to circumstances in which the school "exercises substantial control over both the harasser and the context" in which the harassment occurs. *Id.* at 645. This framework for liability in sexual harassment cases ultimately serves as a proxy for the showing of intentional discrimination that is otherwise required for Title IX claims. Thus, while the school is not itself committing the sexual harassment, it can be said to be intentionally discriminating if it knows of severe and pervasive sexual harassment occurring within its control and, for example, does nothing. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

In the instant case, Plaintiff alleges multiple types of Title IX claims. Baylor's Motion to Dismiss, however, addresses only those claims that are "based on Baylor's alleged failure to assist Plaintiff after the alleged assault." (Mot. Dismiss, Dkt. 9, at 6). Baylor asserts that these claims are time-barred. *Id.*[1]

---

[1] Baylor also seeks dismissal of Plaintiff's claim for injunctive relief, as discussed *infra* Section IV.

## A. Legal Standards

"A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014). While Title IX has no express limitations period, the Fifth Circuit recently held that the two-year general personal injury limitations period set out in Section 16.003 of the Texas Civil Practice and Remedies Code applies to Title IX claims brought in Texas.[2] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759–61 (5th Cir. 2015); Tex. Civ. Prac. & Rem. Code Ann. § 16.003.

"Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law." *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)). "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). "[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 1995)). "'[A]wareness' [of the existence of the injury and causation] . . . does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 576). Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there

---

[2] Plaintiff asserts that a five-year statute of limitations applies to her claims. (Resp., Dkt. 13, at 8). This Court has rejected the same argument in analogous cases. *See, e.g.*, *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 662 n.8 (W.D. Tex. 2017).

was a causal connection between the [defendant's acts] and injury." *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Regardless of when a claim accrues, the statute of limitations may be tolled in certain cases. The doctrine of equitable estoppel, for example, tolls the statute of limitations when a defendant conceals material facts from a party without knowledge of those facts. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998). Specifically, the doctrine requires "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010). Fraudulement concealment, a similar doctrine based on the principles of equitable estoppel, "estops a defendant to rely on the statute of limitations as an affirmative defense when the defendant owes a duty to disclose but fraudulently conceals the existence of a cause of action." *Cody Texas, L.P. v. BPL Expl., Ltd.*, 513 S.W.3d 522, 539 (Tex. App.—San Antonio 2016, pet. denied) (citations omitted).

### B. Discussion

Plaintiff asserts that her post-reporting claims did not accrue until Pepper Hamilton's recommendations and findings of fact were released in May 2016. (Compl., Dkt. 1, ¶¶ 137–39). Baylor argues that Plaintiff's alleged claims accrued well before that date. (Mot. Dismiss, Dkt. 9, at 10–12).

Having reviewed the parties' filings and relevant law, the Court concludes that Plaintiff's claims accrued, at the latest, in May 2013. Plaintiff knew of her alleged post-reporting injuries, including her continuing subjection to harassment, in 2012 and 2013. She also knew that Baylor had failed to intervene. Further, because she notified Baylor of her assault, Plaintiff knew the university

had actual knowledge of her assault and her continued exposure to a hostile environment. *See King-White*, 803 F.3d at 762 ("[A] claim accrues . . . the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that [s]he has been injured.").

Plaintiff argues that, even if her post-reporting claims had accrued by 2013, they should be tolled. Making reference to the doctrines of fraudulent concealment and equitable tolling, she asserts that her post-reporting claims are "based on Baylor's affirmative involvement in manipulating and misinforming Plaintiff of her rights or lack thereof, discouraging Plaintiff from taking further action with respect to the sexual assault, and concealing Baylor football players' and school officials' misconduct with respect to Plaintiff's sexual assault." (Compl., Dkt. 1, ¶¶ 137–39). According to Plaintiff, she therefore could not have known of her injuries prior to the release of the Pepper Hamilton materials discussed above. (*Id.* ¶¶ 137–42).

Fraudulent concealment is based on the doctrine of equitable estoppel, and Plaintiff uses the same alleged facts in support of both arguments. The Court will therefore consider the application of equitable estoppel and fraudulent concealment together. *See B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 60 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Because fraudulent concealment is based on the doctrine of equitable estoppel, and because [the plaintiff's] equitable estoppel and fraudulent concealment defenses are based on the same alleged conduct by [the defendant], we consider them together.").

Plaintiff alleges that Baylor "manipulate[ed] and misinform[ed] Plaintiff of her rights or lack thereof." (Compl., Dkt. 1, ¶ 137). Even accepting this as true, whether Baylor misinformed Plaintiff of her rights is not the question. Equitable estoppel and fraudulent concealment required the false representation or concealment of material facts. *Schroeder*, 813 S.W.2d at 489; *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). Plaintiff knew the facts underlying any post-reporting claims specific to her experience by 2012 or, at latest, 2013. She knew she had

7

been assaulted. She knew she had reported the assaults and that, according to her complaint, Baylor had done nothing in response. She knew of her ongoing harassment at the hands of Baylor football players.[3] "Knowledge of such facts is in law equivalent to knowledge of the cause of action." *Borderlon*, 661 S.W.2d at 909. Applying applicable state law, then, the Court concludes that Plaintiff may not avail herself of either fraudulent concealment or equitable estoppel. Any post-reporting claims specific to her own experience are time-barred and must therefore be dismissed. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 209 (Tex. 2011) (finding that the doctrine of fraudulent concealment did not toll the limitations period because the plaintiff had "actual knowledge of [the] alleged injury-causing conduct"); *Lilly v. Texas Dep't of Criminal Justice*, 472 S.W.3d 411, 420 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("Appellees' 'deceit,' if any, did not conceal these facts underlying [the plaintiff's] causes of action; therefore, we determine that [the plaintiff] did not raise a fact issue regarding the doctrine of fraudulent concealment."). With respect to any individual post-reporting claims, Defendant's Motion to Dismiss is **GRANTED**.

## IV. CLAIM FOR INJUNCTIVE RELIEF

As noted above, Plaintiff seeks a permanent injunction ordering Baylor to (1) "refrain from unlawful discrimination and/or retaliation"; (2) "undertake and rectify any and all Title IX violations and/or inequities"; (3) "refrain from creating and condoning a hostile sexual harassment and/or discriminati[ng] environment against individuals on the basis of sex by immediately ceasing deliberate indifference to sexual assaults"; and (4) "cease interference with the disciplinary process in favor of students who were charged with sexual assault." (Compl., Dkt. 1, ¶ 145). Baylor argues that Plaintiff, who is no longer a student at Baylor, lacks standing to bring a claim for injunctive relief. (Mot. Dismiss, Dkt. 9, at 16). Plaintiff, despite filing a response to Baylor's Motion to Dismiss, did not refute Baylor's arguments regarding her claim for injunctive relief. (*See generally* Resp., Dkt. 13).

---

[3] Plaintiff has also not alleged any representations by Baylor that induced her to not pursue her legal claims. (*See, e.g.*, Compl., Dkt. 1, ¶¶ 107–08 (alleging that Baylor enlisted individuals to convince Plaintiff not to speak to the media).

8

With respect to Plaintiff's claim for injunctive relief, Defendant's Motion to Dismiss is therefore **GRANTED**.

## V. LEAVE TO AMEND

Plaintiff, in cursory fashion, argues that she should be entitled to amend her complaint. (Resp., Dkt. 13, at 15). The Court disagrees. As Plaintiff notes, there is a strong presumption in favor of allowing amendment rather than dismissal, and "[l]eave to amend should be freely granted when justice requires." *Fin. Acquisition Partners, L.P. v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). Here, however, Plaintiff failed to exercise her right to amend her complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1) (providing that a party may amend her pleading once as a matter of course within 21 days after service of a motion under Rule 12(b)). Moreover, because Baylor's motion concerns only those claims that are barred by the statute of limitations or for which Plaintiff does not have standing to bring, it is not possible for Plaintiff to allege additional facts that would alter the Court's conclusion regarding their viability. Amendment would be futile, and Plaintiff's request should be denied. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (noting that it is "within the district court's discretion to deny a motion to amend if it is futile" and explaining that futility means "that the amended complaint would fail to state a claim upon which relief could be granted").

## VI. CONCLUSION

Defendant's Partial Motion to Dismiss, (Dkt. 9), is **GRANTED**. Any post-reporting claims specific to Plaintiff are **DISMISSED**. Plaintiff's claim for injunctive relief is also **DISMISSED**.

**SIGNED** on March 19, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE